# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| REGINA B. DAVIS, | * |
| Plaintiff, | * |
| vs. | * CIVIL ACTION NO. 18-000339-B |
| ANDREW M. SAUL,[1] | * |
| Commissioner of Social Security, | * |
| Defendant. | * |

## ORDER

Plaintiff Regina B. Davis (hereinafter "Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.* On April 10, 2019, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 18). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 5, 2019. Commissioner Saul is hereby substituted for the former Acting Commissioner, Nancy A. Berryhill, as the named defendant in this action. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I. <u>Procedural History</u>

Plaintiff protectively filed her application for benefits on July 14, 2015, alleging disability beginning March 15, 2014, based on "asthma, HBP [high blood pressure], heart problems, left leg swollen, sleep disorder, and acid reflux." (Doc. 13 at 156, 188, 193). Plaintiff's application was denied and upon timely request, she was granted an administrative hearing before Administrative Law Judge Paul Reams on January 3, 2017. (<u>Id.</u> at 28). Plaintiff attended the hearing with her counsel and provided testimony related to her claims. (<u>Id.</u> at 34). A vocational expert ("VE") also appeared at the hearing and provided testimony. (<u>Id.</u> at 54). On August 10, 2017, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (<u>Id.</u> at 15). The Appeals Council denied Plaintiff's request for review on June 26, 2018. (<u>Id.</u> at 5). Therefore, the ALJ's decision dated August 10, 2017, became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). Oral argument was conducted on April 26, 2019 (Doc. 20), and the parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

II. <u>Issues on Appeal</u>

> 1. **Whether substantial evidence supports the RFC for a range of light work with the stated restrictions?**
>
> 2. **Whether the ALJ erred in failing to order a consultative orthopedic examination?**

### III. Factual Background

Plaintiff was born on May 20, 1972, and was forty-four years of age at the time of her administrative hearing on January 3, 2017. (Doc. 13 at 34, 188). Plaintiff completed the twelfth grade and trained as a certified nursing assistant. (Id. at 35, 194).

Plaintiff worked as a certified nursing assistant from 1992 to 2014.[2] (Id. at 38). At the administrative hearing, Plaintiff testified that she stopped working because of problems with dizziness and high blood pressure. (Id. at 37-39).

### IV. Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[3] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court

---

[2] Plaintiff testified that she worked as a housekeeper in 2015 (after her onset date of March 15, 2014); however, the ALJ found that her housekeeping work was part-time and did not satisfy the requirements of past relevant work. (Doc. 13 at 17, 36-37, 54).

[3] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

## V. Statutory And Regulatory Framework

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The

Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability. 20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985).

If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

## VI. Discussion

### A. Substantial evidence supports the ALJ's RFC for a range of light work with the stated restrictions.

Plaintiff argues that the ALJ's RFC for a range of light work is not supported by substantial evidence because the ALJ "failed to cite any acceptable medical evidence or opinion" to support the RFC for a range of light work. (Doc. 14 at 2, 4). The Government counters that substantial evidence supports the ALJ's findings and the RFC. (Doc. 15 at 5-9). Having reviewed the record at length, the Court finds that Plaintiff's claims are without merit.

Residual functional capacity is a measure of what Plaintiff can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's residual functional capacity are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his or her impairments, and must be supported by substantial evidence. See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546

6

and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012). Once the ALJ has determined the plaintiff's residual functional capacity, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence. See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985). Plaintiff has failed to meet her burden in this case.

In his decision, the ALJ found that Plaintiff has the severe impairments of sleep related breathing disorder, obesity, and disorders of the back (discogenic and degenerative). (Doc. 13 at 17). Even so, the ALJ found that Plaintiff still has the RFC to perform a range of light work with the following restrictions: Plaintiff can occasionally climb ladders, ropes, or scaffolds and occasionally stoop, crouch, kneel, or crawl. (Id. at 19). Based upon the testimony of the vocational expert, the ALJ concluded that, although Plaintiff is unable to perform any of her past work, she can perform the jobs of assembler, folder/laundry, and hand packager, all of which are light and unskilled. (Id. at 21-55). Thus, the ALJ found that Plaintiff is not disabled. For the reasons discussed herein, the Court finds that the ALJ's decision is supported by substantial evidence.

At the outset, it should be noted that Plaintiff's contention that the ALJ's RFC assessment is not based on substantial evidence

7

simply because the record is devoid of a formal RFC assessment by an examining medical source is incorrect. "The ALJ's RFC assessment may be supported by substantial evidence, even in the absence of an opinion from an examining medical source about Plaintiff's functional capacity." Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10 n.5, 2012 WL 997222, *4 n.5 (M.D. Ala. March 23, 2012) (citing Green v. Soc. Sec. Admin., 223 Fed. Appx. 915, 923 (11th Cir. 2007) (unpublished) (RFC assessment was supported by substantial evidence where ALJ properly rejected treating physician's opinion and formulated plaintiff's RFC based on treatment records, without a physical capacities evaluation by any physician)); see also Packer v. Astrue, 2013 U.S. Dist. LEXIS 20580, *7, 2013 WL 593497, *2 (S.D. Ala. February 14, 2013) (the fact that no treating or examining medical source submitted a physical capacities evaluation "does not, in and of itself, mean that there is no medical evidence, much less no 'substantial evidence,' to support the ALJ's decision."). Thus, Plaintiff's argument is without merit.

Turning to the RFC, with respect to Plaintiff's back problems, the record before the ALJ contained imaging taken on June 13, 2016, of Plaintiff's lumbar spine, which showed "mild" disc space narrowing a L2/L3 and L5/S1 and "moderate" disc space narrowing at L3/L4. (Id. at 449). An MRI of Plaintiff's thoracic spine taken in November 2012 showed a disc bulge at T3-T4 through T9-10, with

8

no severe canal stenosis, and a 2013 MRI of Plaintiff's cervical spine showed no significant disc abnormalities, no high grade central stenosis, and no neuroforaminal impingement. (Id. at 302). Significantly, the record contains few instances of Plaintiff complaining of back pain. (Id. at 263-64, 446). On September 29, 2014, Dr. Olajide Akinsanya, M.D., treated Plaintiff for high blood pressure and vertigo, and, at that time, noted that Plaintiff was complaining of back pain. (Id.). Dr. Akinsanya's physical examination findings on that date, and at follow-up examinations through June of 2015, reflect largely normal musculoskeletal examinations, normal extremities with no swelling, normal neck with full range of motion, and normal gait. (Id. at 265, 268-69, 273-74, 357). In 2014 and 2015, Plaintiff's cardiologist, Dr. Benjamin Citrin, M.D., also consistently documented normal musculoskeletal examination findings and noted that Plaintiff was "doing well" and had a normal gait. (Id. at 286-99, 332). Similarly, Plaintiff's treatment records from Franklin Primary Health Center in 2014 and 2016 reflect largely normal musculoskeletal examination findings, normal extremities with no swelling, and normal neck examination findings, although Plaintiff did complain of back pain on one visit in September 2016. (Id. at 255, 406, 412, 442, 446). In addition, the records of Dr. Frankie Erdman, M.D., who treated Plaintiff on March 12, 2014, at the Mobile Infirmary when she presented with complaints of dizziness,

9

reflect largely normal musculoskeletal examination findings. (Id. at 303-05). It is significant that none of Plaintiff's treating or examining physicians indicated that her back condition even required treatment.

Next, with respect to Plaintiff's left leg pain and knee pain, the record shows that Plaintiff sought treatment from Dr. Albert Pearsall, M.D., in 2015 for complaints of left leg and knee pain. X-rays of Plaintiff's knees taken in May 2015 showed "patellar lateralization without subluxation." (Id. at 388). In June 2015, Dr. Pearsall ordered an MRI of Plaintiff's left knee, which showed "Grade 2-3 chondrosis of the patellofemoral compartment and knee joint effusion," "intramuscular lipoma," and a "small Baker's cyst." (Id. at 386-87). In September 2015, Dr. Pearsall successfully excised the lipoma from Plaintiff's left leg, and noted at follow-up that Plaintiff was "doing well." (Id. at 382, 393-94, 397). After Dr. Pearsall's successful removal of the lipoma on Plaintiff's left leg, neither he nor any other treating physician recommended further treatment for Plaintiff's left leg pain and swelling, other than to elevate, apply ice, and wean herself off of the pain medication. (Id. at 393-94). Dr. Pearsall instructed Plaintiff that, after he removed the stitches, she could "get back to her regular activities." (Id. at 394). As for Plaintiff's knee pain and inflammation, Dr. Pearsall prescribed Mobic for pain. (Id. at 402, 413). Significantly, it does not

10

appear that Plaintiff sought treatment for, or even mentioned, knee pain after her 2015 treatment by Dr. Pearsall. Moreover, in 2015 and 2016, Plaintiff's physical examination findings consistently documented "normal" extremities with no swelling, and additional imaging and tests performed on Plaintiff's lower limbs in 2016 showed no deep vein thrombosis and no arterial insufficiency.[4] (Id. at 269, 306, 416-20, 442, 446, 453-54).

With respect to Plaintiff's left thumb and left wrist pain, the record shows that Plaintiff was treated by Dr. Jared Burkett, M.D., on May 11, 2015. According to Dr. Burkett's treatment notes, x-rays of Plaintiff's left wrist and hand showed "no real degenerative changes," but "there may be slight subluxation and widening of the CMC joint on the left." (Id. at 403). Dr. Burkett diagnosed Plaintiff with "early" osteoarthritis of the left thumb and left wrist de Quervain's, for which he prescribed pain medication, occupational therapy, and a thumb splint. (Id. at 396, 403). In November 2015, Dr. Burkett ordered further x-rays of Plaintiff's right hand and thumb, which were "unremarkable." (Id. at 381). He again recommended occupational therapy, but Plaintiff declined. (Id.). Dr. Burkett administered a cortisone injection and a splint. (Id.). Significantly, there is no indication that Plaintiff returned for further treatment of her

---

[4] The same was true for earlier tests in 2014. (Doc. 13 at 306).

11

thumb or wrist.

With respect to Plaintiff's heart problems, the record shows that Plaintiff was treated at Mobile Infirmary in March 2014, after complaining of dizziness and fainting. (Id. at 302). Plaintiff's physical examination revealed normal heart and lungs and normal neurological examination findings, although her blood pressure was high. (Id. at 303-05). Thereafter, Plaintiff sought treatment from Dr. Citrin, a cardiologist, from March 2014 to August 2015, for various symptoms, including dizziness, fainting, shortness of breath, and chest pain. Tests and physical examinations revealed largely normal brain, heart, and lung function and normal physical examination findings, with the exception of "abnormal exercise myocardial perfusion scan with a small to moderate area of anterior scar versus attenuation," and "abnormal valve function with mild tricuspid regurgitation." (Id. at 287-99, 309-32). On July 30, 2014, Dr. Citrin noted that Plaintiff was still feeling palpitations in her chest and experiencing dizziness and leg pain and swelling, all of which he attributed to "low potassium and, magnesium." (Id. at 292, 295). Dr. Citrin adjusted Plaintiff's medication, and his treatment notes reflect that Plaintiff was taking her medications, that she was "feeling better" with improvement in shortness of breath, no swelling, no palpitations, and that her dizziness and vertigo were "relieved with Antivert." (Id. at 289). On August 25, 2015, Dr. Citrin again noted normal

heart and lung function and normal physical examination findings and instructed Plaintiff to follow up in four months. (Id. at 332). Plaintiff did not return to Dr. Citrin after that date.

With respect to Plaintiff's hypertension, the record shows that she was hospitalized for high blood pressure in March 2014. (Id. at 263). Thereafter, she continued treatment for hypertension primarily at Franklin Primary Health and, to some extent, with her other treating physicians. With few exceptions, Plaintiff's condition was well controlled with medication.[5] (Id. at 266-67, 406, 441, 446).

With respect to Plaintiff's activities of daily living, Plaintiff reported that she cares for her sixteen-year-old daughter, takes care of her own personal care needs, cooks, does laundry, goes out every day, shops in stores, and handles her own finances. (Id. at 181-86). Moreover, there is no indication that Plaintiff has any problems with ambulation or the need for a cane or other assistive device. (Id. at 186).

Based on the foregoing, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff can perform a range of light work with the stated restrictions.

---

[5] In May 2016, Plaintiff's treatment notes reflect that her blood pressure was 161/84; however, she reported being out of her medication at that time. (Doc. 13 at 414). Plaintiff was instructed to diet, exercise, and be compliant with her medication regimen. (Id.).

13

Indeed, Plaintiff has failed to show that any limitations caused by her impairments exceed the RFC and are not accommodated by the RFC and its stated restrictions. Accordingly, Plaintiff's claim must fail.

> **B. The ALJ did not fail to fully develop the record by failing to order a consultative orthopedic examination.**

Plaintiff also argues that the ALJ erred in failing to fulfill his duty to develop the record by failing to order a consultative orthopedic examination. (Doc. 14 at 4). Plaintiff states that she requested a consultative orthopedic examination, but the request was denied.[6] (Id. at 2, 4). The Government counters that the medical evidence in the record was sufficient for the ALJ to make an informed decision regarding the RFC; thus, a consultative orthopedic examination was neither necessary nor required. (Doc. 15 at 5-9). Having reviewed the record at length, the Court finds that Plaintiff's claim is without merit.

It is well established that a hearing before an ALJ in social security cases is inquisitorial and not adversarial. A claimant bears the burden of proving disability and of producing evidence

---

[6] The record shows that Plaintiff requested a consultative orthopedic examination based on her diagnoses of inflammation in the tendons of her right wrist, early osteoarthritis in her thumb, "status post left leg lipoma excision with continued pain," and reports that her left leg "interferes with activities of daily living." (Doc. 13 at 224).

14

in support of his claim, while the ALJ has "a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003); see also Ingram v. Commissioner of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007).

In fulfilling his or her duty to conduct a full and fair inquiry, the ALJ has the discretion to order a consultative examination where the record establishes that such is necessary to enable the ALJ to render a decision. Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir. 1988). The ALJ is not required to order a consultative examination where the record contains sufficient evidence to permit the ALJ's RFC determination. Ingram, 496 F.3d at 1269 ("The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision."); Good v. Astrue, 240 Fed. Appx. 399, 404 (11th Cir. 2007) (unpublished) ("the ALJ need not order an additional consultative examination where the record was sufficient for a decision.").

Having reviewed the record in this case, the Court finds that the ALJ fulfilled his duty to develop a full and fair record and did not err in failing to order a consultative orthopedic examination. The record before the ALJ contained the medical records from the physicians who treated Plaintiff for all of her

15

ailments, including her back problems, leg and knee pain, thumb and wrist pain, heart problems, and hypertension, and the record contains no discernible evidentiary gaps related to these medical issues. Indeed, following imaging of Plaintiff's back, wrist, thumb, and knees (her reported orthopedic problems), the treatment recommended by her treating physicians was conservative, if any.

Based on the foregoing, the Court is satisfied that the record was sufficient to enable the ALJ to determine Plaintiff's RFC without ordering a consultative orthopedic examination or obtaining an RFC assessment from any medical source. Moreover, for the reasons discussed in detail above, the Court is satisfied that substantial evidence supports the RFC for a range of light work with the stated restrictions. Accordingly, Plaintiff's claim must fail.

## VII. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED**.

**DONE** this **4th** day of **September, 2019.**

                                            **/s/ SONJA F. BIVINS**
                                     **UNITED STATES MAGISTRATE JUDGE**